## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

L.M.,                                           :
                                                :
       **Plaintiff,**              :       **Case No. 2:24-cv-04168-ALM-EPD**
                                                :
    **v.**                              :       **Judge Algenon L. Marbley**
                                                :       **Magistrate Judge Elizabeth P. Deavers**
**G6 HOSPITALITY, LLC, G6**                     :
**HOSPITALITY FRANCHISING, LLC, and**           :
**WYNDHAM HOTELS & RESORTS, INC,**              :
                                                :
      **Defendants.**            :

### OPINION & ORDER

This matter comes before this Court on Defendant Wyndham Hotels & Resorts, Inc.'s

("WHR" or "Wyndham") motion to dismiss or, in the alternative, to transfer venue (ECF No. 13),

and Plaintiff's motion for leave to file a sur-reply (ECF No. 30).  For the reasons set forth below,

Defendant's motion is **DENIED** (ECF No. 13), and Plaintiff's motion is **GRANTED**

(ECF No. 30).

### I.       BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"),

18 U.S.C. § 1595(a) and the Child Abuse Victim's Rights Act ("CAVRA"), 18 U.S.C. § 2255.

Plaintiff L.M., an Ohio resident, alleges that from approximately 2019 through 2022, she was

trafficked for sex as a minor in hotels owned by Defendants Wyndham Hotels & Resorts, Inc.

("Wyndham" or "WHR") and G6 Hospitality, LLC ("G6") (collectively, "Defendants"), including

at Wyndham's LaQuinta Inn and Suites in Romulus, Michigan.  (ECF No. 1 ¶¶ 4, 31). Plaintiff

alleges that, at Defendants' hotels, she was forced to engage in commercial sex with many men

everyday under threats of physical and psychological abuse.  (*Id.* ¶ 5).

Plaintiff alleges WHR profited from L.M.'s sex trafficking by renting rooms to Plaintiff's traffickers and from Wi-Fi data collected from the rooms. (*Id*. ¶ 104). She also alleges that "to save costs and continually reap millions of dollars in profits, Defendant[ ] generally failed to create, adopt, implement, and enforce company-wide policies and procedures regarding suspected incidents of human trafficking at the branded properties." (*Id*. ¶ 42).  According to L.M., each stay at the WHR branded property raised "several consistent red flags," that should have been obvious to staff, "including, but not limited to: Paying for stays in cash; Paying for extended stays on a day-by-day basis; Requesting a room away from other guests; Unusually large number of used condoms in the trash; Unusually large number of male visitors coming in and out of the room." (*See e.g.*, *id*. ¶ 67). Plaintiff also alleges that hotel staff witnessed the obvious signs of Plaintiff's trafficking including signs of abuse, "including bruising and physical and verbal abuse occurring in public areas of the Defendants' properties as well as signs of malnutrition and poor health." (*Id*. ¶ 60).

Plaintiff now seeks to hold WHR liable under the TVPRA and CAVRA.  On November 15, 2024, Plaintiff filed this action. (ECF No. 1). On January 14, 2025, Defendant WHR moved to dismiss Plaintiff's claims or, in the alternative, to transfer venue.  (ECF No. 13).  Plaintiff opposed the motion (ECF No. 20), and Defendant replied (ECF No. 23).  On March 30, 2025, Plaintiff moved to file a sur-reply (ECF No. 30).  This matter is now ripe for resolution.

## II.    LAW & ANALYSIS

### A.  Motion to Dismiss

WHR seeks dismissal of Plaintiff's claims, arguing that the Complaint fails to allege a "beneficiary" theory of liability under the TVPRA, fails to state a claim for vicarious liability under the TVPRA, and fails to allege a CAVRA claim.[1]  (*See generally* ECF No. 13).

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. The Complaint should be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

### 1.  Direct Civil Liability under the TVPRA

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in several cases with many factual similarities to this one. *See T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 793 (S.D. Ohio 2024)

---

[1] WHR's motion also argues that the Complaint lacks well-pled allegations that WHR was a "perpetrator" under the TVPRA. (*See* ECF No. 13 at 6–7).  In her motion for leave to file a sur-reply, however, Plaintiff submitted that she is withdrawing her claim for perpetrator liability. (ECF No. 30 at 3).  Accordingly, this Court does not address WHR's arguments with respect to perpetrator liability.

(citing cases). The TVPRA has two provisions relevant to this case. First, the TVPRA provides

for criminal penalties set forth in 18 U.S.C. § 1591:

> (a) Whoever knowingly—
>
> > (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> >
> > (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
> >
> > knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim, is the standard for civil liability

under the TVPRA set forth in 18 U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

As a preliminary matter, this Court has held in several cases that § 1595(a) can be a

standalone claim, and civil defendants need not have committed the underlying criminal sex

trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2

(citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection

Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the

4

amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")).

This Court likewise finds that Plaintiff provides the Motion to Dismiss because her allegation that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim of this chapter" pursuant to § 1595(a) (ECF No. 1 ¶ 146).

This Court analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of § 1595(a). The plaintiff must plead the following in order to survive a Motion to Dismiss under this theory: (1) the person or entity must "knowingly benefit[ ], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). "A plaintiff may satisfy these elements by showing that 'defendant's own acts, omissions, and state of mind establish each element.'" See *T.D.P.*, 725 F. Supp. 3d at 794 (S.D. Ohio 2024) (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021)).

### a.  "Knowing Benefit"

The "knowing benefit" element merely requires that WHR knowingly receive a financial benefit, not that WHR have actual knowledge of an illicit venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *accord H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *see also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowing benefit element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding that the forced labor

5

provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach").

Because Plaintiff alleges that WHR rented rooms to her traffickers and benefited financially from those rentals (ECF No. 1 ¶ 104), Plaintiff's allegations are enough to satisfy the element of "knowing benefit" under Section 1595(a).[2]

### b. *"Participated in a venture"*

Plaintiff has also alleged sufficient facts to demonstrate Defendants' conduct constituted "participation in venture" under § 1595(a). This Court has held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) (holding that "the relevant 'venture'" under Section 1595 need not be 'specifically a sex trafficking venture'" and can be a "'commercial venture[]' like running or expanding a business."); *Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL 6682152, at *4 (same); *A.C.*, 2020 WL 3256261, at *6 (same). Further, participation in a venture under § 1595 does not require an "overt act." *See e.g., J.L.*, 521 F. Supp. 3d at 1062; *E.S. v. Best W. Int'l Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021); *M.A.*, 425 F. Supp. 3d at 968–69; *S.J.*,

---

[2] WHR, moreover, does not contest the sufficiency of Plaintiff's allegations to satisfy this element at the pleading stage.

473 F. Supp. 3d at 153–54; *Doe S.W.,* 2020 WL 1244192, *6; *J.C.* v. Choice Hotels Int'l, Inc., 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020).

Plaintiff asserts that because WHR "owns, supervises, manages, control, and/or operates" the properties at which L.M. was trafficked, it therefore had a continuous business relationship with the franchisee who rented her traffickers rooms there. (ECF No. 1 ¶ 27).  Plaintiff alleges that Defendants exerted this control over the property through myriad means including providing reservation platforms, providing training to employees, providing customer review platforms, and implementing standardized rules of operation.  (*Id*. ¶¶ 128–35).

WHR counters that the hotel properties are subject to third-party agreements and are owned and operated by entities removed from its control. (ECF No. 13 at 7–8). This Court has previously concluded that a corporate vertical relationship between Defendants and the hotel operators is not too attenuated to support Plaintiff's claim.  *See e.g., N.B. v. Red Roof Inns, Inc.*, No. 2:22-CV-3771, 2024 WL 1332386, at *4–5 (S.D. Ohio Mar. 28, 2024), *amended on reconsideration sub nom. In re Hotel TVPRA Litig.*, No. 2:21-CV-4933, 2024 WL 4945135 (S.D. Ohio Dec. 3, 2024). Specifically, this Court has distinguished the Eleventh Circuit's decision, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), which concluded that plaintiffs failed to allege that "the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA," *id.* at 726–27, emphasizing that "'[k]ey to the court's reasoning' in *Doe #1* 'was how the plaintiffs had chosen to define the alleged venture—specifically as a "sex trafficking" venture.'"  *N.B.*, 2024 WL 1332386, at *5 (quoting *G.G.*, 76 F.4th at 561-62).

Here, Plaintiff alleges that Defendants were engaged in commercial business ventures at the property where Plaintiff was trafficked, in addition to the sex-trafficking ventures themselves. (*See* ECF No. 1 ¶ 151 ("Each Defendant participated in a venture together and with, among others,

Plaintiff's traffickers.")).  Plaintiff's allegations are sufficient to support a "commercial business" venture for purposes of TVPRA liability.

In a similar vein, Defendants' argument that "providing services that are used as instrumentalities by third-party traffickers does not show participation in a venture that committed trafficking crimes" is unavailing.  (ECF No. 13 at 9).  As discussed above, the alleged venture "need not be 'specifically a sex trafficking venture.'"  *G.G.*, 76 F.4th at 554. Instead, it can "be a business whose primary focus is not on sex trafficking."  *Id*.  In *G.G.*, for example, plaintiffs alleged that the defendant, Salesforce, provided advice and software to Backpage, a now-defunct website that hosted advertisements posted by the minor plaintiff's street-level trafficker. *Id.* at 548. The Seventh Circuit concluded that the venture there "was Backpage's business itself, including the 'growth,' 'expansion,' and profitability of that business."  *Id*. at 554. Salesforce's relationship with Backpage certainly fell within the ambit of its "ordinary business activities," much like WHR's.

WHR also complains that Plaintiff is seeking to impose on them an affirmative duty to seek out and prevent trafficking.  (ECF No. 13 at 10).  Plaintiff, however, does not allege mere observation coupled with a failure to intervene.  This is not an attempt at bystander liability. Instead, she asserts that Defendants "had a statutory obligation not to benefit financially or receive anything of value from a venture that they knew, or should have known, engaged in violating the TVPRA."  (ECF No. 1 ¶ 148).  She further alleges that WHR:  (1) profited from the rooms her traffickers rented and failed to implement trafficking prevention training programs; (2) collected room reservation, identification, payment, and sex trafficking website data from the trafficker's use of hotel Wi-Fi; and (3) had expansive control over hotel operator policies and operations but did not use that power to hold the franchisees accountable.  (*Id*. ¶¶ 128–35).

This Court finds that Plaintiff's allegations that Defendant profited, failed to implement policies, and maintained expansive control over the hotel operation standards meet § 1595's definition of "participation in a venture." *See T.D.P.*, 725 F. Supp. 3d at 797. Here, Plaintiff has plausibly alleged that Defendant was involved in a business venture with the hotel operators, and both groups benefitted by renting rooms to traffickers despite having at least constructive knowledge of ongoing trafficking based on the totality of the circumstances.

c. *"Knew or should have known" that the venture violated the TVPRA*

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. WHR need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates that constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)).

WHR argues that L.M.'s allegations based on what hotel operators may have observed are insufficient to establish its "actual knowledge" of Plaintiff's trafficking. (ECF No 10 at 11). Additionally, it contends that L.M.'s allegations based on "(i) general knowledge of sex trafficking in the hospitality industry or at other branded properties, (ii) policies related to human trafficking, and (iii) the availability of guest-related data" are insufficient to establish constructive knowledge. (ECF No. 10 at 12 (citing ECF No. 1 ¶¶ 85-88, 104, 107, 110, 138)).

Plaintiff responds: (1) that there were signs of Plaintiff's trafficking which should have been obvious to hotel staff; (2) that Defendant and the hospitality industry more broadly, have long been aware of the prevalence of human trafficking at their properties; and (3) that Defendant failed to take action regarding human trafficking. (*See* ECF No. 20 at 15–16). Specifically, Plaintiff alleges that hotel staff witnessed the obvious signs of Plaintiff's trafficking including signs of

abuse, "bruising and physical and verbal abuse occurring in public areas of the Defendants' properties as well as signs of malnutrition and poor health." (ECF No. 1 ¶ 60). Plaintiff also alleges that her stays at WHR's properties produced repeated "red flags," including payment in cash, extended stays paid for on a day-to-day basis, large numbers of male visitors, and audible signs of distress during conflict between Plaintiff and her traffickers. (*Id*. ¶ 67).

This Court has previously held that notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *M.A.*, 425 F. Supp. 3d at 968. Seeing similar allegations in the case at hand, this Court reaches the same conclusion.

This Court is guided in its analysis by two cases that establish the spectrum on which civil liability under the TVPRA can be found. In *Ricchio v. McLean*, the plaintiff alleged that the hotel owner and the trafficker were working together in a sex trafficking scheme evidenced by a "high-five" while discussing "getting this thing going again," a past business relationship between the two, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [plaintiff's] obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Plaintiff alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." Id. The Court concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595. *Id*. at 557.

Conversely, in *Lawson v. Rubin*, plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women who he then sexually assaulted and abused at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The

court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus had done further investigation following the incidents, it would not have uncovered any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at *13–14.

Plaintiff's allegations fall somewhere in between *Ricchio* and *Lawson*. This Court has previously concluded that many aspects of Plaintiff's experience, as described above, should have alerted staff to her trafficking, including excessive condoms, cash payments from her traffickers, and frequent male guests. *See M.A.*, 425 F. Supp. 3d at 967; *see also T.D.P., 725 F. Supp. 3d at 798; T.P.*, 2022 WL 17363234, at *8-9. Plaintiff has also alleged that Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence. (*See* ECF No. 1 ¶¶ 84–89; *id.* ¶ 90 ("[d]espite mounting evidence that sex trafficking at its properties was ongoing and growing, [Wyndham] continued to earn revenue by continuing conduct that [it] knew or should have known would facilitate that trafficking")). These allegations are sufficient to survive a 12(b)(6) motion to dismiss.

Defendant nonetheless contends that a generalized awareness of sex trafficking is insufficient. (ECF No. 13 at 19). "But the express terms of the statute impose liability for benefiting from a venture that the Defendant knew or should have known was engaged in violations of § 1591, not violations of § 1591 with respect to a particular person. § 1595." *T.D.P.*, 725 F. Supp. 3d at 799.

The facts specific to Plaintiff's own sex trafficking, in combination with her allegations that Defendant was on notice about the prevalence of sex trafficking at its hotels yet continued to

rent rooms to traffickers and failed to take adequate steps to train staff in order to prevent its occurrence, together support a conclusion that Defendant had constructive knowledge of the trafficking occurring at their hotels because they "should have known" about the nature of the venture under the beneficiary theory's negligence standard. § 1595. *See id.* (reaching same conclusion). Therefore, this Court finds that Plaintiff's allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving this Motion to Dismiss.[3]

Because Plaintiff's allegations meet the three-pronged requirement of 18 U.S.C. § 1595, Plaintiff has sufficiently stated a claim that Defendant is directly, civilly liable under the TVPRA. *See M.A.*, 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections); *T.D.P.*, 725 F. Supp. 3d at 797–99 (same).

### 2. *Vicarious Liability under the TVPRA*

A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing "to the defendant the acts, omissions, and state of mind of an agent of the defendant" through indirect or vicarious liability. *J.L.*, 521 F. Supp. 3d at 1060. The TVPRA, however, does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue apply common law to fill in the gaps. *See T.D.P.*, 725 F. Supp. 3d at 799 (citing cases). This Court has applied federal common law when considering vicarious liability allegations under the TVPRA. *Id.* at 799–800 ("[T]his Court will proceed under a federal common law analysis of the

---

[3] WHR also argues that "[a]ssessing joint and several liability . . . requires there to be a judgment against WHR (and other Defendants) in the first place, which . . . Plaintiff has failed to allege is warranted." (ECF No. 13 at 19). But "[g]iven that no Defendant has even been found liable in this case, it would be premature to preclude joint and several liability at this juncture." *Doe v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3759761, at *7 (S.D. Ohio Aug. 12, 2024).

issue. This approach brings the analysis in line with the Sixth Circuit's approach to applying the federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments.").  Here, Wyndham argues that Plaintiff fails to plead properly vicarious liability under the TVPRA pursuant to agency and joint employer theories of liability.

### a.  Agency

The Sixth Circuit relies on the Restatement of Agency when applying the federal common law of vicarious liability. *Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 586 (S.D. Ohio 2016). Agency is most commonly defined as the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). A defining element of agency "is the principal's right to control the agent's actions" such as "[t]he power to give interim instructions." Id. at cmt. f (1); *see also Savanna Group, Inc. v. Trynex, Inc.*, No. 10-C-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2012) (explaining that "[t]he power to give interim instruction" is an element that "distinguishes principals in agency relationship from those who contract to receive services provided by persons who are not agents."). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus. Inc.*, 524 U.S. at 755–56 (1998) (quoting Restatement (Second) of Agency § 219(1) (1957)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model also does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker v. R & A Pizza, Inc.*, 804 F.Supp.2d 615, 623 (S.D. Ohio 2011) ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself preclude the

existence of a principal-agent relationship between them."). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id*. (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)). To succeed under an agency theory, Plaintiff must show both: (1) that Defendant and its franchisees were in an agency relationship; and (2) that hotels or hotel staff are plausibly liable under § 1595(a).

Plaintiff alleges that Defendant exercised day-to-day control over the hotel property at issue here. (ECF No. 1, ¶¶ 113–121). Plaintiff argues that this includes requiring franchisees to, among other things: (1) use WHR's property management system; (2) use WHR's centralized reservation system; (3) submit to periodic inspections with threat of termination; (4) gather reservation, payment, and occupancy data through WHR's centralized system; (5) use approved Wi-Fi and security vendors; (6) comply with WHR's regulated room rental rates; (7) share profits; and (8) adhere to other brand standards and corporate policies with respect to ethics and safety. (*Id*. ¶¶ 116–17). These allegations are sufficient to meet the pleading standards of Federal Rule of Civil Procedure 8 to demonstrate Defendant's control over the franchisee properties for purposes of an agency relationship and vicarious liability. *See T.D.P.*, 725 F. Supp. 3d at 801.

And Plaintiff alleges that the hotel operators themselves committed a wrong that can be imputed on Defendant. *See J.L.*, 521 F. Supp. 3d at 1064-65. This Court applies the three-pronged test established by 18 U.S.C. § 1595—and already used to assess WHR's direct liability—to the hotel operators as well: (1) the person or entity must "knowingly benefit[ ], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a).

First, Plaintiff alleges that the operators rented rooms to traffickers and financially benefited from their trafficking ventures, therefore satisfying the first prong. (ECF No. 1 ¶ 104). Second, Plaintiff has alleged sufficient facts—that the hotel operators, along with Defendant, benefited financially from renting rooms to traffickers and should have known trafficking was going on based on the totality of the circumstances—to meet § 1595's definition of "participation in a venture" in a commercial setting that profited from Plaintiff's sex trafficking. (Id.). Plaintiff alleged sufficient facts to demonstrate that employees at the hotel had constructive knowledge that she was being trafficked; specifically, that staff would have seen many red flags pointing toward trafficking and signs of Plaintiff's physical deterioration and abuse. (*See e.g., id.* at ¶¶ 60, 67). Therefore, the beneficiary theory is satisfied with respect to the hotel operators.

### b. Joint Employer Liability

Much like agency theory, whether two employers are a joint employer also often turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed. App'x 587, 594 (6th Cir. 2009) (adopting the following test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.").

"While the factors this Court must consider when analyzing both agency and joint employer theories of vicarious liability are very similar, important among those to establish a joint employer theory of vicarious liability is the control exercised by the franchisor specific to employment policies." *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 804–05 (S.D. Ohio 2024) (quoting *B.D.G. v. Choice Hotels Intern., Inc.*, No. 2:22–zcv–3202, 2023 WL 5935646, at *10 (S.D. Ohio Sep. 12, 2023)).

Here, Plaintiff alleges that Wyndham is "the employer of the staff at its branded properties"; "posts all hotel jobs on its parent website"; is "responsible for setting the core values and culture for all Wyndham employees"; and "sets forth policies for, and provides, employee benefits." (ECF No. 1 ¶ 137). These allegations are sufficient to meet the requirements to plead joint employment. *See A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 805 (S.D. Ohio 2024) ("[B]ecause Plaintiff alleges that Defendant posts all hotel jobs on its website, controls employee training, and provides employee benefits, she has sufficiently pleaded a joint employer theory against Wyndham."), *amended on reconsideration sub nom. In re Hotel TVPRA Litig.*, No. 2:21-CV-4933, 2024 WL 4945135 (S.D. Ohio Dec. 3, 2024).

Defendant's motion to dismiss with respect to Plaintiff's vicarious liability claim under the TVPRA is therefore denied.

### 3. *Liability Under CAVRA*

WHR also challenges the sufficiency of Plaintiff's allegations to support a claim under the Child Abuse Victims Rights Act, 18 U.S.C. § 2255(a) ("CAVRA"). Under CAVRA:

> Any person who, while a minor, was a victim of a violation of section ... 1591 [among others] ... and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in

the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

§ 2255(a). At the outset, WHR argues that Plaintiff has failed to allege that she was a minor at the time that she was trafficked through Defendant's branded properties. Not so. Plaintiff alleges that she was trafficked from approximately 2019 to 2022 (ECF No. 1 ¶ 56), and that "[a]t the time her trafficking began, Plaintiff had run away from Foster Care *at the age of 14 . . . .*" (*Id.* ¶ 3 (emphasis added)). Plaintiff further alleges that she "was a 'minor' pursuant to 18 U.S.C. § 2255(a) when she was trafficked." (*Id.* ¶ 157). As this Court previously observed, "a complaint 'must be read "as a whole," and all reasonable inferences must be drawn in the plaintiff's favor.'" *T.D.P.*, 725 F. Supp. 3d at 790 (quoting *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 446 (6th Cir. 2014), *as amended* (Dec. 11, 2014)). It is patently reasonable to infer from Plaintiff's complaint that she was a minor at the time she was trafficked at WHR's properties. *See id.*

Defendant next argues that the plain language of CAVRA requires Defendant itself to have violated § 1591, the portion of the TVPRA that creates criminal liability for those knowingly engaged in or knowingly benefitting from sex trafficking, or other criminal statutes of which Plaintiff alleges she was a victim. (*See* ECF No. 13 at 19) ("A CAVRA claim is available only against the perpetrators of the crimes against the minor.").

This Court's analysis begins and ends with the text of the statute.[4] As this Court and others have observed before, § 2255 does not specify against whom a lawsuit may be brought. *Jane Doe*

---

[4] It is worth noting that, on different briefing, this Court concluded that a similarly situated plaintiff sufficiently alleged a § 2255 claim on the theory that the plaintiff could show that the defendant itself, Wyndham Hotels, violated § 1591, the criminal portion of the TVPRA, by a preponderance of the evidence. *T.E. v. Wyndham Hotels & Resorts, Inc.*, 2023 WL 5531441, at *10 (S.D. Ohio Aug. 28, 2023). When *T.E.* was decided, the interpretation of § 2255 above had not been argued to this Court. Given that this is a developing area of the law, and the Parties' arguments have evolved accordingly, this Court is now better positioned to analyze the issue and finds the above interpretation persuasive. *See T.D.P.*, 725 F. Supp. 3d at 791.

*No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012) (concluding that a cruise line could be held liable under § 2255 for the sexual crimes of its employees). In light of that silence, the Court is guided by one of the most familiar canons of statutory interpretation: "courts may not add or subtract words from a statute." *Id.* By asking this Court to conclude that only perpetrators can be held liable, Defendant "effectively asks this Court to re-write the statute by inserting (after 'may sue') the words 'the offender' or 'the perpetrator.' " *Id.* at 1340. Congress has added similar language in analogous scenarios, and could have done so here, had it intended to limit liability to the criminal perpetrator. *Id.* As this Court's reads it, the absence of a grammatical object in § 2255(a) is conspicuous and, therefore, likely intentional.[5] The text provides no reason to believe that Congress intended to prohibit plaintiffs from suing beneficiaries of and participants in the many crimes enumerated in § 2255, "so long as plaintiffs' claims comport with the traditional requirements of standing—injury in fact, causation, and redressability." *See T.D.P.*, 725 F. Supp. 3d at 791.[6]

Here, Plaintiff has sufficiently alleged that she was injured when she was trafficked in violation of § 1591 as a minor. Defendant's alleged participation in and benefit from a venture it should have known was in violation of the TVPRA, discussed above, is enough to establish causation for purposes of a standing analysis. *See Rieves v. Town of Smyrna, Tennessee*, 67 F.4th

---

[5] This Court acknowledges, as it has before, *In re Hotel TVPRA Litigation*, 2023 WL 3075851, at *6 (S.D. Ohio Apr. 25, 2023), that a House Report from 1998 indicates that "[i]t is the intention of the Committee that only the offender who perpetrated the offense against the minor is liable for damages under this section." H.R. REP. 105-557, 23 (1998). "But the text of the statute is the ultimate reflection of Congress's intent. Congress has revised § 2255 several times and not seen fit to add language specifying that only offenders or perpetrators of the criminal predicate may be liable, despite an apparent awareness of the issue." *See T.D.P.*, 725 F. Supp. 3d at 791 n.2.

[6] "The fact that § 2255 is silent as to vicarious liability does not undercut this conclusion." *See T.D.P.*, 725 F. Supp. 3d at 791 n.3. Congress's repeated silence as to persons liable is much more conspicuous than its silence as to vicarious liability, and indeed supports the availability of vicarious liability. *See id.*

856, 862 (6th Cir. 2023) (holding that "the plaintiff need not prove that the defendant was the sole cause of his injury as long as harm is a 'predictable effect' of the defendant's actions on the decisions of third parties."). And Plaintiff's harm is one a court can redress through damages. Accordingly, this Court concludes that Plaintiff has pleaded sufficient allegations to survive a motion to dismiss on her CAVRA claim.

Defendant WHR's motion to dismiss Plaintiff's TVPRA and CAVRA claims (ECF No. 13) is therefore denied.

## B. Motion to Transfer

In the alternative, WHR argues that Plaintiff's claims against WHR should be severed and transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a) is appropriate because Plaintiff's allegations arise from events in Michigan. (ECF No. 13 at 20–21).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Courts interpreting Section 1404(a) "must engage in a two-step analysis and determine: (1) whether the action might have been brought in the proposed transferee court; and (2) whether considering all relevant factors, the balance of convenience and the interest of justice 'strongly' favor transfer." *Proctor & Gamble Co. v. Team Tech., Inc.*, No. 1:12–cv–552, 2012 WL 5903126, at *3 (S.D. Ohio Nov. 26, 2012). When examining the second step, "courts are to consider both the private interests of the parties and the public's interest in the administration of justice." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 165 (S.D. Ohio 2012). Private interests include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditions and inexpensive.

*Id.* (quoting *Jamhour v. Scottsdale Ins. Co.*, 211 F.Supp.2d 941, 945 (S.D. Ohio 2002)). Relevant public interests include "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Id.* (internal citation omitted). Finally, in evaluating transfer under § 1404(a), this Court has considered "additional factors includ[ing] the nature of the suit; the place of the events involved; ... and the residence of the parties." *Id.*

Transfer is inappropriate when it merely shifts the burden of inconvenience. *See Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964). A plaintiff's choice of forum is therefore entitled to "great deference" and "should only be rejected if the above factors weigh heavily in favor of the defendant." *In re Richardson-Merrell, Inc.*, 545 F. Supp. 1130, 1132-33 (S.D. Ohio 1982); *see also Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 672–73 (S.D. Ohio 2011) (noting that there is "a strong presumption in favor of a plaintiff's choice of forum," which may be overcome "'only when the private and public interest factors clearly point towards trial in the alternative forum.'" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

Here, Plaintiff is a resident of Ohio, and she chose to file suit here. WHR's only argument for transfer is "that the relevant witnesses are more likely to reside in Michigan rather than Ohio." (*See* ECF No. 13 at 21). As this Court previously recognized, "a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to support a change of venue." *A.C. v. Red Roof Inns, Inc.*, No. 2:19-CV-4965, 2020 WL 3256261, at *3 (S.D. Ohio June 16, 2020) (internal quotation marks and citation

20

omitted)).  Accordingly, this Court finds that WHR fails to show that the relevant factors are "strongly in favor of a transfer." *See First Bank of Marietta v. Bright Banc Sav. Assoc.*, 711 F. Supp. 893, 896–97 (S.D. Ohio 1988). WHR's motion (ECF No. 13), to the extent it seeks transfer venue, is therefore denied.

### C.  Motion for Leave to File a Sur-Reply

Plaintiff has also moved for leave to file a sur-reply to contest WHR's argument that Plaintiff failed to allege a predicate violation of Section 1591.  (See ECF No. 30 at 2).  Because the motion is unopposed and the information in Plaintiff's proposed sur-reply "provides the Court with additional helpful information on issues in dispute," the motion for leave to file a sur-reply (ECF No. 30) is **GRANTED**.  *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.  Supp. 971, 974 (S.D. Ohio 1993).

### CONCLUSION

For the foregoing reasons, Defendant WHR's motion to dismiss or, in the alternative, to transfer venue is **DENIED** (ECF No. 13) and Plaintiff's motion for leave to file a sur-reply is **GRANTED** (ECF No. 30).

**IT IS SO ORDERED**.

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 29, 2025**

21